Our next case is the United States v. Said. The appellant is the government of the United States and Mr. Attias, the assistant United States attorney in charge of this case in the Eastern District of Virginia, is appearing remotely on the video. It's good to have you with us, sir. Thank you, Judge. You're prepared. We're prepared to hear from you. Thank you, Judge King. Good morning and may it please the court. I think the best place to start in a case like this is where the district court began, which is with his application of the modified categorical approach to the question of which predicate offense the jury necessarily relied on in convicting the defendant on counts 4 and 10. I think it's important to start here for two reasons. The first is that it is perhaps one of the clearest examples of the district court's error, but also because this error really set the stage for everything else that followed. So, in the district court, the defendants urged Judge Jackson to apply the modified categorical approach to the question of which predicate the jury relied on in convicting the defendant. The defendants made a pretty full-throated argument on that point. All the government opposed, arguing that the modified categorical approach just had no bearing on the question of which predicate the jury relied on in the multi-predicate 924C scenario. Then this court decided Ali, and in Ali, the court explicitly rejected the position the defendants were offering that the modified categorical approach had any bearing on the question of which predicate a jury relied on when there were multiple predicates. The government brought Ali to the district court's attention. The defendants then addressed Ali in a reply brief, and then again in a supplemental file. Judge Wynn has a question. Good to see you, Mr. Pius. Thank you for your argument today. I want to just ask, if we agreed with you that the modified categorical approach does not apply in this case, does that end the case? Well, Your Honor, I think Ali has already decided that point of law. So, I can address your question in a few ways. To the extent that Your Honor is asking whether the court should remand, I don't think the court should. I think the court, the district court, had Ali before it, and it could have applied Ali and its principles, including hedge path, but it didn't. So, the answer to your question is it was legal error for the district court to apply the modified categorical approach, but this court can take an independent review of a district court's harmlessness determination. That's what the court did in Biriano, and that's what the court generally does when it reviews harmlessness. In fact, it makes more sense for this court to actually undertake the harmlessness determination here on appeal because it's something the court does pretty regularly, whereas district courts generally don't do that. But you do agree that we could simply just send this back to Judge Jackson and let him do it in the proper vein that you, the vein that you consider to be proper. That would be a remedy, that would be an outcome that you, I guess, wouldn't be too opposed to, would you? So, we would be opposed to it. I mean, I do think that district court did commit legal error. So, in theory, that is a reason to reverse for that reason and no other reason. However, as I was saying earlier, because the district court had an opportunity to apply Ali, it had Ali before it, it had briefing on Ali, the district court basically, that ship has sailed. And we know, for example, in the Supreme Court's recent decision in Greer, footnote one, that it's inappropriate to remand when the party has already had an opportunity to make a showing required by whatever the governing law is. And again, and that is very much this case, we presented the district court with Ali. Ali was on the books for four months to the day, actually, before the district court decided to issue here. And again, because this court can make an independent review of a district court's harmlessness determination, it makes more sense for this court to do it. And then there's one final reason, Judge Wynn, which is more of a practical reason. Hold on. Yes, sir. Let me just ask you, you said it's inappropriate to remand the cases there. And I'm thinking, is that, that's typically in a case where the government's on the other side of the case. In this instance, the government did not prevail, and this defendant prevailed, and the question of whether to remand, isn't it, that sort of put it a little different when we, in terms of what the trial judge did, as opposed to cases in which the government prevails on it. And then we looked and said, well, we don't need to remand because we can determine this as being the basis. Is there not a difference? Judge Wynn, I'm not sure there is a difference. What I do know is that the district court had Ali before it. It had the case, and it had briefing on it, and it chose to ignore the case. So, in the context of this case, it doesn't really make sense to send the case back for determination of the issue under Ali when the court already had Ali. And there's another practical point which I was about to raise, which probably bears on judicial economy in ways in favor of this court deciding the issue, which is that there are two cases currently held in abeyance for a decision in this case, in the United States versus Said. They're both co-defendants of this defendant. They're Osman and Jama. And in one of the cases, a month after, and this is the United States versus Jama, a month after the district court decided the issue in this case, about a month after this court granted the stay, the district court, sua sponte, vacated co-defendant Jama's conviction without briefing, and despite the fact that the defendant, Jama, had never challenged it. Was that decided on the basis of Said? The district court explicitly adopted its opinion in Said and incorporated it, and the only analysis in that opinion is Said. And the government has appealed in that case. How many other defendants got the benefit of this Said case? So, no defendant has yet to receive a benefit of the Said case, but that goes to another point, which I was about to make. Well, they got the ruling, and it stayed. Is that what you're saying? Said has stayed. Jama has received the benefit of Said. However, he also has a separate life sentence. So, but if I could correct myself, he did receive the benefit of it. We aren't going anywhere for a while. That's exactly right, and that's why we didn't move for a stay. We're talking about pirates on the high seas who attacked a U.S. Navy ship. That's what we're talking about. And we're dealing with whether a couple of the counts, counts four and ten, are defective as a result of some subsequent legal rulings. They aren't going anywhere for a while, so I don't think things are in a big hurry. They might be in other situations. Sure, sure. So, the example of the second co-defendant. Why would we deviate from our normal way of doing things, going back to Judge Wynn's inquiry, just because you're in a hurry to get this thing decided? So, I think the case of the other co-defendant, the other case, which is Co-defendant Osmond, might answer your question, Judge King. Co-defendant Osmond's case comes before this petition to file a successive habeas petition. Now, the interesting thing about Osmond is that his case is actually cited in our opening brief. Osmond, along with the other co-defendant, Cabas, is one of the defendants that the district court denied identical relief to on the basis of Count 7 and 8 insulating his convictions on Count 10. So, just there, the district court has basically set up, respectfully, a mini-split with itself, two-to-one, on the same issue, in the same case, on the same indictment, on the exact same count. So, the district court has come to opposite conclusions on the exact same issue with respect to the same indictment and the same count. That practically begs for this court's attention, Your Honor. We've discussed a bit what I think is the wrong standard of review, which is that the district court applies a modified categorical approach. And I'd like to address what we think is the correct lens through which to determine the issues in this case. We know under this court's decision in Robinson that a defendant has to show not only that he could have been convicted on the invalid theory, but also that he wasn't convicted on the valid theory. And in the context of this case, we just don't think the defendant can do that. We know from this court's harmless error decisions, and there are many, and they're cited in both of our briefs, that we can tell whether an error is harmless. When the jury makes findings that are functional equivalent of a correctly instructed theory, when we know that the jury necessarily found facts that established the valid theory, and that's really this case, we know that the jury convicted the defendant of assaulting federal officers aboard the Ashland with a dangerous weapon. That's count seven. And in count eight, we know that the defendant committed an act of violence against individuals on the Ashland. Those acts were accomplished with a firearm. We know in count 10 that the jury concluded that a firearm was discharged. Well, how do we know all that when it was a general verdict? Well, the defendant was convicted on the underlying, every underlying predictive. They had to find one crime of violence, right? That's under this court's precedent. The jury had to just find one crime of violence. Just for my purposes, I'm looking at count 10. They had to find a crime of violence. Yes. And you alleged in the indictment there were eight of them. And instead of asking the jury to find a special verdict in which, how they voted on each of the eight counts, you just threw a general verdict out there on the table, and they said guilty. So, we don't know whether jurors, you may have had two jurors voting to convict on count one, and four on count two, and three on count three, and all the way through, but not a unanimous on any of them. You could have had, because you asked for a general verdict. You, the government. So, Judge King, the jury . . . And that's what creates all this legal problem with this trial, is that the government asked for a general verdict at the trial. When they had alleged eight crimes of violence, they didn't ask the jury and tell the jury that they had to find, be unanimous on at least one of them. They stood out there and got a general verdict of guilty. And then we got to try to figure all this out. Right. So, Judge King, the jury convicted separately on the underlying predicates. Did I say anything that was incorrect, factually? I'm sorry. Did I say anything was incorrect? I'm not sure that the government asked for a general verdict, but we're left with a general verdict. So, we, of course, accept that that is this case. In hindsight, it would have been much easier to have not had a general verdict. We certainly wouldn't be here because there couldn't be a question. And you all do that in lots of cases. You ask for . . . submit interrogatories to the jury. In situations where you've alleged multiple predicate drug offenses, for example, and let them find whether it was marijuana or heroin or cocaine or that kind of thing, and get the jury to pin down the jury on it when they're there. But here, we just do it all in one pot. That is what happened, Judge King, but I don't think there can be any doubt that the jury convicted at least in reliance on 7 and 8 because of the nature of those charges. And we know the jury unanimously convicted on 7 and 8. And even if we have many predicates, that doesn't change the nature of the inquiry. We know that the inquiry stays the same. Hedgepeth and Ali and other harmlessness cases don't turn on the number of predicates that are alleged and the number of theories of liability. We know, for example, from Skilling . . . You only need one. We just need one under hair and across . . . In the indictment in relation to a commission of a crime of violence, if you just said as charged in count 8 and then said you got that general verdict, it wouldn't be here today. I agree that it would have been simpler. It would have certainly been simpler. It probably wouldn't be here, Judge King. But ultimately, going back to the governing inquiry, the defendant has to show not just that he could have been convicted under the invalid theory, but that he wasn't convicted on the valid theory. That's a showing that the defendant has to make. And he cannot make that in this case because we know from count 7 and 8, both of which were accomplished by using a firearm. We know from count 10 that a firearm was just discharged. But the verdict on those counts tells us that the jury relied on still predicates. And just to maybe flesh out a bit on the point of ambiguity, Judge King, since the beginning of this case, the defendant has argued that it's impossible to know how the jury voted. We sort of just discussed this in the context of whether the jury needs to just rely on one and how there were eight alleged. You see this argument in the initial 2255 with the supplemental motion and the defendant's response brief on appeal. And the phrase most often used is impossible to say or impossible to determine. And for the reasons I just explained, I don't think it's ambiguous how the jury voted because we have count 7 and 8 at the very least. But even if that were not so, this gets us back to the governing inquiry. We know from Ali, from Robinson, from Stitt, from Hastings, those are all this case, this court's plain error cases, and also from this court's decision in Smith, which is the 2255 case. The ambiguity alone is just not enough to cap it today. In fact, a lot of those cases use the same phrase, impossible to know, and reject the same types of arguments. Yes, Judge King? Judge Wynn? What is the significance of the Crawley case in here? So Crawley reiterates the principle that the jury, that only one valid crime of violence needs to be found to support a 924C conviction. Yeah, I think Crawley in a broader scale also supports the proposition that after Davis, and this is a line from Crawley, that courts are not going to grant a windfall based on developments in the law that nobody could have foreseen. That's a paraphrase from Crawley. The defendant in Crawley made a fairness argument, and the court said in the very last lines of the opinion that it would decline to grant a windfall when the defendant has a valid crime of violence predicate that is supported. I think that's how Crawley matters here, but the procedural posture of both cases is a little bit different. I think Ali is the case that is most on point. Your Honor, as I see, I have run out of time, so I'm happy to come back on the questions. Ms. Keenan, do you have additional questions? Ms. Wynn? Thank you very much, Mr. Tias. We'll get back to you in a few minutes. Thank you. Ms. Taney? Yes, good afternoon, Your Honors. May it please the Court, Marisa Taney for Ali Mohammed Saeed. I want to start focusing on a key distinction here in this case, which is the government's argument in this case is not actually that the district court didn't apply the proper standard based on Ali. It is based on the government's disagreement with Judge Jackson's determination about whether the district court should apply the proper standard based on Ali's determination. Before you go there, I want to make an initial reference to the categorical approach to modified categories. Is that applicable here? No, so part of the issue here is that— That makes sure if we agree it's not applicable, then you can move into the— Yes, yes, Judge Wynn. You don't have to explain why you don't think it is. If you think it's not, then I'm okay. So the categorical approach, the modified categorical approach is not applicable on harmlessness evaluation. It is, and Ali made this clear, applicable in figuring out whether there was an error here, but that doesn't really seem to be up for debate. I think part of the issue is when the opening brief was filed, the language had not yet been removed from Runyon that would have allowed for that sort of an application and argument. But at this point, we're not arguing that it is the application of the modified categorical approach that gets Judge Jackson to the correct finding that the error in this case was not And I want to turn for a second, Judge King, to what you pointed out, because the real issue here is the specifics of this case, and that's what Ali says. You have to do this case-specific and fact-intensive inquiry based on the case you have before you. And when you look at this case, it is very distinguishable from Ali. It's actually an extremely unique case. Did Judge Jackson do a case-specific analysis here? Yeah, well, Judge Jackson specifically said that his decision was based on the record before him, and he did cite to a lot of the differences that we cite to in our briefing. That includes the inclusion of seven potential predicates for both of these 924C charges. And it's important here that those seven predicates— Let me understand, at least on the basis you have 10 counts, jury gets a general verdict. How does that go? Is it like, are you unanimous on all 10, or is it unanimous on each one? So, the unanimity problem is another problem here, and Judge Jackson— Answer that question, because that's going to help me with the next question. The jury should be unanimous on the predicate upon which it is basing its 924C charges. And when you look at count 7 and count 8, which is assault with a deadly weapon on an act of violence against a person's own vessel, don't think the fourth is count 10, right? Count 10 is use of a firearm for the crime of violence. Where else would you get it from? So, the conspiracy charges for one. So, count 10 is the discharge of a firearm and— That's the substantive offense. Yeah. Count 4 is the conspiracy. Correct. Conspiracy is out. I mean, those you can't use, right? So, count the conspiracy— I'm just counting the conspiracy stuff. Yeah, so count— It's not there. There's nothing in there about, well, I guess the conspiracy to carry a firearm, using carry it on violence. When you look at the actual assault with a deadly weapon on federal officers' employees, assault of violence, I'm trying to figure that out. I mean, you've got someone who goes on a Navy ship, high power, piracy. He has an AK-47. He's the one that has it, right? Do you comply? So, there's no allegation that he discharged it, and count 10 is a discharge count. Well, no, he's the one that had it, though, right? But he had a weapon on their ship that was not— And a grenade launcher. Yes, which was not— When it was an AK-47, they had a grenade launcher. Yes. So, any questions about what they had and what they were doing? It's a general verdict. So, again— I don't know— Well, go ahead. No, Judge King, I want to focus on what you pointed out during the government's argument for precisely that reason, because the proper standard here is a determination based on the facts of this case about whether there is more than a reasonable probability that the jury actually relied on those improper predicates in convicting him. It's not whether the substantive charges in counts 7 and 8 can support a 924C charge. They're valid predicates. That's why we're here. The question in this case, when you're determining whether an error is harmless, is whether there is more than a reasonable probability that the jury did rely on those counts in this case. They had to have a valid predicate. Correct. Are you disregarding, though, your burden of proof? Isn't it your burden on collateral review to show actual prejudice? It is, Your Honor. Okay. How does this case even begin to approach a showing of actual prejudice on the record when the jury unanimously agreed that the defendant committed an assault with a deadly weapon? Um, we know that. How do you get to any semblance of actual prejudice here? And I want to talk a little bit about how this case was actually argued, because again, in this case— But talk about your burden of proof, too, and where are the actual prejudices here, because you've got to show actual prejudice. Ali said ambiguity's not enough. We have Brecht. Absolutely. We know you've got to show it, and we know it's your burden. Absolutely. So it is our burden to make that show of actual prejudice, and that actual prejudice would be shown if we can determine that there is more than a reasonable probability that the jury relied on these invalid predicates. And the way we look at that—and Brecht says this, that we have to do this based on the totality of the record. Ali says that it has to be a case-specific and fact-intensive inquiry. So the mere existence of a valid predicate doesn't get you to harmlessness. And in this case, it's not only the way this was charged—and that was Judge King's point, which I think is an important one—the government chose to charge this case and include seven different predicates, which included three conspiracy charges, because it was more likely to get a conviction that way. And now that the law has changed, the government shouldn't be permitted to use that sword as a shield and say, well, maybe it was based on that, but there were other things as well. Because the way that this case was argued—and if you look at the joint appendix at 62, the government talks about conspiracy and expressly predicates count 10 on the conspiracy. They say, let's talk about conspiracy liability. That's when you join at least one other person to commit a crime, but several other crimes flow from that. And that's counts 5 through 10. They expressly connect count 10, which is what we're challenging here. Does your whole argument rest upon the district court's determination that this grave doubt, based on the record that you said is unclear, which the—as to which of the predicate offenses the jury relied upon? No, Your Honor. The argument we're making is not that the lack of clarity or any ambiguity is what gets us to a showing of— Isn't that what the trial judge said? In part, although the trial judge also made a finding—Judge Jackson also made a finding that but for the inclusion of these invalid predicates, there is more than a reasonable probability that Mr. Sayeed wouldn't have been convicted. And that's in the opinion at page 21. So he does make this specific finding of the harm. So you agree that ambiguity is not sufficient? After Ali, yes. So Thomas, yes. Okay. We know that there was a conviction on the two substantive offenses. So how do you get anywhere in meeting your burden of proof? Because again, I think we have to go back to the burden of proof in connection with what we're actually being asked to prove here. And that is this reasonable probability standard. Right. And I'm saying you have the conviction on the two substantive offenses. Yes. We know that the jury unanimously agreed on those, don't we? Well, we know that they unanimously agreed that those offenses took place, but there is no suggestion that the jury unanimously agreed that those were committed in furtherance of the crime of harm. The jury unanimously agreed that these facts occurred. Correct. And so again, I'm really struggling because I think that, you know, the law puts you at a real disadvantage in these cases. It does. On collateral review, and I'm having trouble just seeing how you get there. Absolutely, Judge. And that, it is a high standard and it is our burden, and nobody's contesting that here. But this is an unbelievably unique case. Do we give any deference to the ruling of the district court, ruling of the district court here, or everything is de novo? So everything is de novo, but I do think . . . So we don't give any deference? I think that you . . . We don't give any deference, and Counts 7 and 8 are solid as a rock. The substantive convictions on Counts 7 and 8 are not being challenged here. Right. And those are predicate offenses for Count 10? Yes, but the . . . Are those predicate offenses for Count 4? Yes. All of . . . Is there any valid distinction that could be made here that you win or lose on one count and then win or lose on another count? Is there any way we could affirm on one count and reverse on another? Are they a package deal? I think that when you look at the way in which this case was charged, the reliance on all seven of these predicates, at least three of which, as many as five of which . . . I understand there's three of them that are defective now. Yes. But all they need is one. Yes. But they need one that the jury actually relied on. I think that's the important distinction here, is that the government's argument that the existence of a conviction on any valid predicate necessarily affirms the 924C conviction isn't correct. It also bears noting that Count 10 here is a discharge count. No one's ever alleged . . . Where in the world would the government get that notion from then? They just made it up, but you don't think there's any case law to support it? I think that the government misunderstands Robinson and converts this reasonable probability standard into a certainty standard, which clearly isn't what Robinson did, because Ali cited to Robinson in connection with Brecht and Hedgepeth and reiterated that the standard, when you're dealing with an alternative theory error on a 2255 challenge, is whether there was more than a reasonable probability that the jury actually relied . . . Not that they could have possibly relied, but they actually relied on one of the invalid predicate counts. So you're saying your burden is . . . We believe that Ali makes clear as . . . He did not rely on the valid predicates, excuse me. But there is more . . . We have to make a showing that there is more than a reasonable probability and Kyle's newly makes clear that's less than preponderance. It's just more than a reasonable probability that the jury relied at trial on an invalid predicate. And that's what Judge Jackson found. He made that explicit finding and he did cite . . . Right, but since we know that conduct occurred, and I don't mean to keep beating the dead horse here, but we know this conduct occurred. Seven and eight occurred. You're not challenging it. So irrespective of what Judge Jackson found on the record, how can we find a reasonable probability that the jury relied on something else? Respect the . . . Reasonable probability as opposed to maybe, you know, ambiguity. Right. We know the ambiguity is not enough. And Brecht answers that question by telling us that we have to look at the entire record when we're making this harmlessness evaluation. Ali answers that question when it says that you have to look at the specific facts of this case because if mere conviction on any valid crime of violence predicate was sufficient to uphold these 924C convictions, we wouldn't be here. Everyone acknowledges . . . There wouldn't be a harmlessness standard. Everybody acknowledges that there are at least two valid predicates in this case and if the defendant was convicted of those valid predicates . . . When you say at least two, you're talking about seven and eight. Seven and eight, exactly. And this is a question for us. We don't give any deference to Judge Jackson. So, the legal standard . . . Isn't that right? So, yes. We're looking at it de novo. It is a de novo review, but in . . . We think that the fact that he was convicted on count eight resolves this whole thing at the end. So, the . . . Isn't that right? So, the yes and no, Judge, because reviewing the evaluation of Judge Jackson means that you're taking into account that the district court judge who presided over this trial saw all of the arguments, saw all of the instructions, saw the way this was presented to the jury. You told us we were de novo. You told us we're not in this deference business about seeing everything like that. You said it's de novo. We've been through this too. I mean, some of us have. I think Judge Keenan and I have handled this case three times. And we love Judge Jackson. He's a great man. But, you know, we know what these fellows were into. They were convicted here. And not like . . . Well, the presumption of innocence is pretty far gone. Well, yes, but . . . There's no question about that. And there's nothing wrong with count seven and eight. Yes, Judge. But again, I think that the focus of the inquiry has to be done with reference to the standard. And that's where I think, even though this court does get to review applications of the appropriate legal standard de novo, that Judge Jackson's determination or Judge Jackson's view and decision in this case, that the error in this case was not harmless, should carry some weight with this court because he knew this trial . . . But you're arguing deference. Now, you can argue that, but you earlier said you weren't. In my point, I ask you, do we give any deference to what the district court did? Yes, Judge. And you said no. I think you should . . . We review it de novo. And now you're changing your position, which you're entitled to do as far as I'm concerned. You've got to do what's best for your clients. But let us know which one you want to hang a hat on at the end of the day. And then plant your feet. Figure out what you want and then plant your feet. Yes, Judge. I think that Judge Jackson's determination here should be entitled to some weight, though we acknowledge that the standard for determining whether the legal standard was applied appropriately here . . . So that might be the only issue to decide here is whether he's entitled to some weight. And if he is, you've got a better case. And if he isn't, you really don't have a case. Well, I think . . . And I want to . . . You probably really mean it's persuasive. Yes. Sort of like an out-of-circuit opinion or something like that. You don't mean weight, do you? Yes, I think that it should . . . Or we review it for . . . You'd be better off to argue we review it for clear error. So I want to . . . But you're not going to go that far, don't you? Because it's not in. Let me ask you another question. Doesn't count seven . . . Didn't a conviction require use of a dangerous weapon? Yes, it required the involvement of the dangerous weapon in that assault. But again, count 10 here . . . That was really an element of the offense, was it not? Yes, but discharged by Mr. Saeed was not. And count 10 is a discharged 924C count. So I want to make that point clear, that it's not as though the conduct is coterminous. But even if it were, again, the inquiry here has to be what actually happened at this trial. And Judge Jackson was very focused on that. And he was focused on that because that's what the case law tells us we have to do. Again, Brett says you have to look at the entire record when you're making this determination about whether the error was harmless. Ali says you have to look at the facts of the case. And that's what Judge Jackson did here. And I would urge this court . . . And the court asked earlier whether this wasn't an analysis that you all could do here. And of course, you're entitled to do that. But if you do that, I would urge you all to look at the record in this case. Because repeatedly, the government hammered home conspiracy. That was how they argued this. That was how they told the jury to convict Mr. Saeed. You said repeatedly the government what? Argued conspiracy. Argued conspiracy as the basis for these two specific Section 924 accounts. And the joint . . . Your point there is a juror could have just relied on that and not what actually was shown that your client, in fact, did have it. Well, my client did not discharge the weapon. There was no allegation of that at all at trial. That was Mr. Kabbas, which I actually . . . I want to talk about that for a second as well because the government spoke about this internal split. I'm thinking accounts 7 and 8. Yes. Which deals with the assault with a dangerous weapon. He . . . I don't know if he had discharged it or what. He's the one that had the AK-47, right? He had one of the guns, yes. But again, the 924 C-count is charging discharge of a weapon in furtherance of that crime of violence. And again, there's no allegation that Mr. Saeed actually discharged the weapon. And that, by the way, in this internal split that the government has cited with regard to other co-defendants, Mr. Kabbas's conviction, the one that did not . . . or the one that did discharge . . . Your reform had a separate box that he discharged the weapon. No, Your Honor. The government said in its brief that there was a finding by the jury that he discharged the weapon. There was not. There was not even an allegation. It's not on the form. No. It's not a separate box that says that he discharged the weapon. Correct. It's just a finding that there was discharge of a weapon in furtherance of a crime of violence, but not by Mr. Saeed in any way. And again, that is . . . I think Judge Jackson's differing outcomes on these co-defendants' cases actually shows that he engaged in precisely this fact-specific inquiry and didn't just say that ambiguity is sufficient. Because for Mr. Kabbas, who discharged the weapon, Judge Jackson found that the error was harmless in that case, and he didn't alter that based on Saeed. And so I think the way that Judge Jackson came out with regard to the different co-defendants actually shows that he did, in fact, look at the specific facts of this case and not base it on a mere ambiguity in the record. Not just on grave doubt, which is the words he used. Well, correct. So grave doubt is the Davis standard. Don't go based on what he said. Let's make a decision on something else, on specific inquiry, even though he said it was based on grave doubt. Yes, Your Honor, but it was based on . . . He actually specifically said it was based on grave doubt because of the record in this case, and that is the standard that Davis told Judge Jackson to follow. Said that relief on 2255 is appropriate where the court has grave doubt that this error actually affected the outcome of the proceedings. And I think that is what Judge Jackson was referencing, and he specifically said that that grave doubt was based on the record at page 22 of his opinion. So again, I think that at bottom, the real issue in this case is the government's disagreement with Judge Jackson's finding that the error was not harmless here because the outcome of that harmlessness inquiry is different than it was in Ali. And it's different than it was in Ali because you have, in this case, seven predicates instead of the two. And importantly, and Judge Jackson cited this in his opinion, the Fifth Circuit has said that the significance of the fact that the predicates in this case were not based on the same conduct is really important because here, as in McLaren and Jones, those specific cases in the Second Circuit agreed as well in Hayworth, you have a case where the now-invalid conduct is broader than the valid conduct, and the Fifth Circuit used this standard to say, I see my time is up. I could just finish the sentence. When did the Fifth Circuit make that case? I'm sorry? When did the Fifth Circuit pen that opinion down? Those were decided in 2019 and 2021. Yeah, so the Fifth Circuit said that in a case where, like this one, where you have invalid predicate conduct that is broader than the predicate conduct, that actually is often sufficient for showing that there is a reasonable probability that the jury relied on now-invalid conduct in reaching those convictions. Thank you, Your Honor. So, before you sit down there, Ms. Keenan, Judge Whalen, do you have any further questions? No, thanks. I'm going to ask a question and you don't have to answer it if you don't want to. Well, first of all, I do have one that I want you to answer. Are you satisfied with what you claim to be the standard of review as to, I'm particularly talking about, do we give any deference to Judge Jackson's ruling? I think that Judge Jackson's evaluation of this case on the facts should carry some weight with this court, but yes, I agree. Some weight. What, do you have any advice to us as to how much weight? Or what do we, what's the standard we're to apply? We've got to look at this. I came in here thinking it was the Nova, but, you know, you're entitled to take your position. Yes, Judge, I think there's a difference between the review of whether the legal standard was properly applied and we would, and that's to know when we would argue it is. I think that Judge Jackson's explanation of how he reached this finding that the error was not harmless in this case is based on the record and cites to specific parts of the record. And we're entitled to take into account the fact that he's seen this case three times and been through it and all that. Anyway, and the other thing is, how do you end up with such good lawyer? That's one that you don't have to answer. We do a lot of pro bono. We've got a Wall Street law firm here representing Mr. Saeed. Yes. Mr. Gleason and I have a pro bono project that deals with a lot of 924 cases. So, yes, that doesn't speak to us. Well, we sincerely appreciate you all doing this. If you're really a good example for the legal community. Thank you very much, Judge. Thank you all. Mr. Ortiz, are you still out there? Thank you, Judge King. A few very quick points. The court asked earlier about remanding and we explained why we thought a remand was unnecessary. I think listening to Ms. Taney's argument, though, Ms. Taney just solidified why this court should not remand. The defendant takes a position that Judge Jackson effectively engaged in Ali's analysis, but that we just disagree with the harmlessness determination. That answers the question. If the defendant believes Judge Jackson engaged in the right analysis and is defending it very clearly, then this court should just decide the merits of this case. As to the question about deference, I don't think there's any deference owed to the district court's determination. This court can take an independent review of the district court's harmlessness determination. There's also nothing really to defer to here. There are basically no factual findings beyond looking at court records like an indictment that this court can easily do. And of course, there's no deference to a conclusion that was reached by way of the wrong legal standard, which is what the court did in using the modified categorical approach. Okay, Mr. Judge? Yes, Judge Taney. Yes, can the defendant, in your view, ever show actual prejudice after there has been a conviction on a valid predicate? I mean, are you taking that very, I don't want to use the word categorical, are you taking that very strong stand? In other words, are you saying it's impossible to show actual prejudice on a record that contains a valid predicate conviction? Your Honor, in this case, I don't think the defendant can make a prejudice showing. I don't think that that means that defendants won't be able to do it in other cases. When a defendant is convicted of an underlying predicate and that predicate was accomplished with a firearm, no one contests that fact. There's no other theory for how the crime was committed. I think it's going to be very hard, but I don't think that that's just a feature of harmlessness review. That's not really a bug. That's just more of a comment on the merits of the defendant's claim as opposed to the institution of harmlessness review. I think this could be a different case, for example, if there was conflicting testimony that the defendants were in the skiff and there was a weapon, but there was also a knife, but there was also testimony that they attempted to ram the skiff into the ashland. Then we wouldn't have that mutual, almost symbiotic relationship between the firearm counts and count seven and eight. It could also be a different case, Judge Keenan, if the defendant, let's say, was acquitted on a predicate count, but even there. Okay. Yeah, I don't mean to interrupt, but okay, when the valid predicate requires a deadly weapon as an element, okay, are you saying that a defendant cannot show actual prejudice when the predicate conviction is established and unchallenged? I'm just trying to figure out how far we're going here. And we're making, our argument goes no further than this particular case, Judge Keenan, but yeah, to your point, to your question, I think that in that circumstance, without knowing anything else, it's likely that conviction on the predicate would be the functional equivalent, that's this course language in a bunch of the cases we've cited in our brief, would be the functional equivalent of finding on the proper instruction. And so a defendant would have a very hard time showing that in widespread . . . Your position is really that it's impossible for a defendant to show that, isn't it? I'm just trying to figure out. It would be very difficult for a defendant who is convicted of a pred, of an underlying predicate that required the use of a firearm to show that he did not use that . . . When a jury finds that a defendant uses a firearm to attack a ship, and that those are the elements of the offense, it's going to be very hard for him to show that he did not attack the ship, that he did not use a firearm. Excuse me, when a jury concludes that a defendant attacks a ship with a firearm, it's going to be very hard for a jury, for a defendant to convince the court that he did not use a firearm to attack that ship. I'll just make a final point about harmless error review in general. The defendants have portrayed this case as somewhat complex, and I think Davis' error is not even remotely novel. It's become something of a routine for the Supreme Court to unsettle previously unsettled understandings of criminal law. And when that happens, the court just looks backwards and applies harmless error review to assess prejudice. This court has been doing it for years in a variety of contexts. All the cases cited in our brief actually stem from some Supreme Court case where, like Rahafe or Skilling or Bailey or Richardson, where everything we knew about criminal law suddenly changed and the court had to look backwards to see if convictions based on alternative theory error could still stand. Our position is that the court should simply continue that course. I'm happy to answer any other questions, Your Honor, when we'd ask that this court reverse the district court on the merits. THE COURT Thank you, Mr. Ortiz. MR. ORTIZ Thank you, Judge Kennedy. THE COURT THE COURT Madam Clerk, I think I'm going to exercise my prerogative to ask for a five-minute recess. But we want to thank, again, counsel very much for your work in this case, for the work that you do every day. And we're pleased to have you with us. If we could do so safely, we would leave the bench and shake hands as we do. Mr. Gleason, it's a tradition in the Fourth Circuit that we read counsel at the counsel table. And we can't do that now. But we would if we could, and we will next time. And with that, we'll take the matter under advisement and take a quick break and hear our next final case. Thank you. THE COURT Dishonorable Court, we'll take a brief recess.
judges: Robert B. King, James Andrew Wynn, Barbara Milano Keenan